IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES DE LOS SANTOS, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:26-CV-122-K-BK |
| | § | |
| CHARLES EDWIN SHOFFNER, ET AL., | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for pretrial management. Before the Court for determination is Defendant Charles Shoffner's *Motion to Transfer Venue Pursuant to the First-to-File Doctrine*, Doc. 24.[1]

For the reasons explained below, the Motion to Transfer is **GRANTED**, and this case is **TRANSFERRED** to the United States District Court for the Western District of Texas for further proceedings.[2]

---

[1] A magistrate judge may properly order that a case be transferred to another federal district or another division of the same court as a nondispositive matter under 28 U.S.C. § 636(b)(1)(A). *Accord Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 792-801 (5th Cir. 2021) (affirming order by magistrate judge, on pretrial management reference, transferring case under 28 U.S.C. § 1631, but labeled by judge as 28 U.S.C. § 1406(a), to another district for want of personal jurisdiction).

[2] Under the circumstances present here, it is appropriate to address the instant motion to transfer before the pending motion to dismiss for lack of subject matter jurisdiction, Doc. 69, since the "first-filed court should decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated," and by properly limiting the analysis to the transfer issue, a district court "avoid[s] trenching on the authority of its sister court, one of the very abuses the first-to-file rule is designed to prevent." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999).

## I. BACKGROUND

Plaintiff James De Los Santos ("Plaintiff") brings this *pro se* civil action against Charles Edwin Shoffner, Sherwood Southwest, LLC, CVB, Inc. d/b/a CVBUT, Inc., and West Creek Financial, Inc. d/b/a Koalafi (collectively "Defendants"). Plaintiff alleges violations of the Sherman Antitrust Act of 1890, the Texas Free Enterprise and Antitrust Act, the Texas Deceptive Trade Practices Act ("DTPA"), as well as common law fraud, fraud by nondisclosure, civil conspiracy, tortious interference, unjust enrichment, theft by deception, and intentional infliction of emotional distress. Doc. 10 at 68-76. Plaintiff seeks monetary damages and injunctive relief, including a declaratory judgment that "any non-compete, non-disclosure, or confidentiality clause in any agreement between Plaintiff and Defendant is void." Doc. 10 at 77.

This suit arises from a commercial dispute between Plaintiff and Mattress by Appointment, LLC ("MBA"), of which Shoffner is the sole owner and member. Plaintiff alleges he was recruited by Shoffner to join MBA, and that Plaintiff entered into a dealer agreement with MBA to operate as an independent dealer selling mattresses and related products within an exclusive territory in Austin, Texas (the "Dealer Agreement"). Doc. 10 at 25-26. In exchange, MBA provided Plaintiff with specialized training, confidential business materials, and access to its proprietary marketing and operations platform. Doc. 10 at 25-26. The Dealer Agreement required dealers to use only mattress suppliers and firms for consumer financing that were approved by MBA, which included Defendants Sherwood Southwest, LLC, CVB, Inc., and West Creek Financial, Inc. *See* Doc. 10 at 4-5. 25-27, 37. The Dealer Agreement also contained an arbitration provision. *See* Doc. 10 at 4-5.

Plaintiff contends that the terms of the Dealer Agreement were hidden from him. Doc. 10 at 33. Specifically, Plaintiff alleges that the exclusive dealing agreement and the arbitration provision were concealed at the back of the Dealer Agreement and in fine print. Doc. 10 at 33.

**A. Santos I**

In June 2025, Plaintiff sued MBA in Texas state court based on Dealer Agreement. ("*Santos I*"). *Santos I* arose after MBA alleged that Plaintiff "attempted to promote and sell artificial intelligence tools to MBA's broader network of independent dealers," which MBA contended violated the Dealer Agreement's prohibition on "marketing unapproved products and soliciting other MBA dealers to interfere with MBA's business relationships." *De Los Santos v. Mattress by Appointment*, No. 1:25-cv-855-ADA, 2025 WL 2533534, at *1 (W.D. Tex. Sept. 2, 2025) (citing *Santos I,* Dkt. 4-1 at 8-12). MBA subsequently "terminated the dealer agreement based on [Plaintiff's] failure to comply with its terms." *De Los Santos,* 2025 WL 2533534 at *1 (citing *Santos I,* Dkt. 4-1 at 4).

In *Santos I*, Plaintiff sought a declaratory judgment that Texas courts have proper and exclusive jurisdiction over disputes arising from the Dealer Agreement. *Santos I*, Dkt. 4-3, at 4. Plaintiff alleged that the arbitration and forum-selection clauses in the Dealer Agreement were procedurally and substantively unconscionable, were never explained to him or meaningfully consented to, and were thus unenforceable under Texas law. *Santos I*, Dkt. 4-3, at 3-4. Plaintiff further contended that when he signed the agreement, he was not given a meaningful opportunity to negotiate, question, or opt out of the arbitration clause, and that enforcing the arbitration provision would violate public policy and impose undue hardship. *Santos I*, Dkt. 4-3, at 3.

3

MBA subsequently removed *Santos I* to the United States District Court for the Western District of Texas and filed a motion to compel arbitration. *Santos I*, Dkt. 4 at 4. In September 2025, District Judge Alan Albright adopted Magistrate Judge Dustin Howell's Report and Recommendation, finding that Plaintiff and MBA entered into a valid arbitration agreement and granting MBA's motion to compel arbitration. *De Los Santos v. Mattress by Appointment*, No. 1:25-cv-855-ADA, 2025 WL 2533534 (W.D. Tex. Sept. 2, 2025). That lawsuit was subsequently stayed. *Id.*

### B. Santos II

In October 2025—after MBA's motion to compel arbitration was granted in *Santos I*—Plaintiff filed a second lawsuit against MBA in Texas state court, which was also removed to the Western District of Texas, ("*Santos II*"). *De Los Santos v. Mattress by Appointment*, No. 1:25-cv-1742-ADA (*Santos II*, Dkt. 1; Dkt. 1-3, at 17-20). In *Santos II*, Plaintiff again sought a declaratory judgment that he was not bound by the arbitration clause in the Dealer Agreement due to fraudulent inducement, "economic duress," unconscionability, MBA's breach of the agreement, and retaliatory termination. *Santos II*, Dkt. 1-3, at 17. Plaintiff also sought a declaratory judgment holding that Procreate, LLC—which he alleged was "[his] business entity,"—and Plaintiff's son and "former W-2 employee," Anthony De Los Santos, were not bound by the Dealer Agreement. *Santos II*, Dkt. 1-3 at 11, 17-18. The remainder of Plaintiff's claims also related to MBA's purported conduct in connection with the Dealer Agreement. *Santos II*, Dkt. 1-3 at 18-19 (alleging fraudulent inducement to sign the agreement, Texas Deceptive Trade Practices Act violations, breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business relations, and extortion).

Magistrate Judge Howell issued a Report and Recommendation that MBA's motion to dismiss be granted under the doctrine proscribing claim splitting. Specifically, Judge Howell found:

> The factual predicates of Santos's suits are clearly related in time, space, origin, or motivation. Both suits relate to the enforceability of the arbitration provision in the dealer agreement, as well as the circumstances under which Santos signed the agreement. While the complaint in this case requests additional forms of relief, including declaratory judgment that neither Procreate nor Anthony De Los Santos are bound by the agreement, the actions are unquestionably related to the same nucleus of operative facts. . . . Further, the undersigned finds that the cases are best considered as a unit given that they center on the same dealer agreement. Finally, the undersigned finds that dismissing this case would protect MBA from "being harassed by repetitive actions based on the same claim" consistent with the purpose of the claim-splitting doctrine.

*De Los Santos v. Mattress by Appointment, LLC*, No. 1:25-cv-1742-ADA, 2026 WL 471812, at *2 (W.D. Tex. Jan. 30, 2026), *adopted by* 2026 WL 466766 (W.D. Tex. Feb. 17, 2026). Judge Alan Albright adopted Judge Howell's Recommendation that MBA's motion to dismiss be granted and warned Plaintiff that he may be subject to sanctions "if he continues to file frivolous claims and otherwise abuse his access to the judicial system." *De Los Santos v. Mattress by Appointment*, 2026 WL 466766, at *1 (W.D. Tex. Feb. 17, 2026). *Santos II* was subsequently closed. *Id.*

### C. This Case

By the instant motion, filed February 27, 2026, Defendant Charles Shoffner seeks to transfer this case to the U.S. District Court for the Western District of Texas under the first-to-file rule. Doc. 24. Defendants West Creek Financial and CVB moved to join Shoffner's Motion. Doc. 26; Doc. 31. Plaintiff filed a response, Doc. 28, and Shoffner filed his reply, Doc. 44.

## II. APPLICABLE LAW

The first-to-file rule is "a discretionary doctrine" based on "principles of comity and sound judicial administration." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). Under the rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.* The rule's purpose is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

According to this well-settled rule, typically, if the case pending before the Court and an earlier-filed case pending in another federal court "overlap on the substantive issues, the cases [should] be . . . consolidated in . . . the jurisdiction first seized of the issues." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (cleaned up). That is because "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed"; thus, "the 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Id.* at 920 (cleaned up). "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed." *Cadle*, 174 F.3d at 605 (cleaned up).

6

"The rule does not, however, require that cases be identical"; rather, regardless of whether the issues or parties in the cases are identical, "[t]he crucial inquiry is one of 'substantial overlap,'" and, if the cases "overlap on the substantive issues, the cases [are] required to be consolidated in . . . the jurisdiction first seized of the issues." *Save Power*, 121 F.3d at 950 (cleaned up); *see also id.* at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").

To determine if there is "substantial overlap" between two cases, courts consider whether "the core issue . . . was the same" and if "much of the proof adduced . . . would be identical" between the two lawsuits. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (citing *W. Gulf*, 751 F.2d at 730 and *Mann*, 439 F.2d at 407). "Complete identity of parties is not required" to find substantial overlap. *Save Power*, 121 F.3d at 951. When there is "less than complete" overlap, "'the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" *Id.* at 951 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

If the court finds that the issues in the two cases might substantially overlap, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle*, 174 F.3d at 606.

## III. ANALYSIS

After reviewing the complaints in *Santos I*, *Santos II*, and instant case, the parties' arguments, and the applicable law, the Court finds that there is substantive overlap between

*Santos I* and this case. Because *Santos I* was filed first, the Court determines that it is appropriate to transfer this action to the U.S. District Court for the Western District of Texas.

First, the parties do not dispute that *Santos II*, which was closed, is no longer pending for first-to-file purposes. Plaintiff, however, contends that *Santos I* also is not pending because it was stayed pending arbitration. Doc. 28 at 6-7. Plaintiff asserts that "[u]nder *Sibley v. Tandy Corp.*, 547 F.2d 286, 288 (5th Cir. 1977), a case sent to arbitration merely awaits post-arbitration confirmation proceedings and is not actively pending in any meaningful sense." Doc. 28 at 6-7. But neither the cited opinion nor the underlying opinion on which the petition for rehearing en banc was based hold as Plaintiff contends. *See generally Sibley v. Tandy Corp.*, 543 F.2d 540, 544 (5th Cir. 1976). The Court finds that, for purposes of the first-to-file rule, *Santos I* remains pending before the Western District of Texas because it is merely stayed and has not been dismissed. *Cf. Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 575 U.S. 650, 664 (2015) (holding that a lawsuit remains "pending" for purposes of the False Claims Act's first-to-file rule until it is dismissed).

Second, in determining if cases overlap, the Court looks to whether the "core issues" are the same and if "much of the proof adduced . . . would likely be identical." *Sweet Little Mexico Corp.*, 665 F.3d at 678 (citing *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). When "the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Sweet Little Mexico Corp.*, 665 F.3d at 678.

There is substantial overlap in the parties and substantive issues in *Santos I* and the instant case. Here, the core issue in this case is predicated on an alleged scheme arising from and related to the Dealer Agreement entered between Plaintiff and MBA—the same Dealer Agreement that gave rise to *Santos I* and *Santos II*. Plaintiff's new antitrust causes of action are likewise predicated on the Dealer Agreement, particularly Section 3.1, the Agreement's "Exclusive Dealing Provision." Doc. 10 at 38-39. Plaintiff now contends that the arbitration agreement and forum selection, at issue in *Santos I*, is void because of antitrust and state law violations (in essence, a collateral attack on the holding of the Western District Court). Doc. 10 at 36. Plaintiff's argument is virtually the same albeit with an additional antitrust cause of action. The evidence allegedly supporting Plaintiff's new claims is still mostly based upon the language of the Dealer Agreement.

The Court notes that, although the complaints and their accompanying affidavits and other evidence show the core issues in the *Santos I* and the instant action are the same, and much of the proof likely to be adduced will be identical, the actions themselves are not identical, as the two actions name nominally different defendants, and identify different causes of action against each.

Specifically, in *Santos I*, Plaintiff has only named his former employer MBA as a defendant, while in the instant action, Plaintiff named Charles Shoffner (MBA's owner), along with suppliers and business partners of MBA, Sherwood Southwest, LLC, CVB, Inc., and West Creek Financial, Inc., as defendants. Doc. 1 at 3; *see* Doc. 10 at 12 (Plaintiff alleges that Shoffner "exercises complete control over the corporate entity known as [MBA] such that it has no separate mind, will, or existence apart from him.").

In *Santos I,* Plaintiff sued MBA seeking a declaratory judgment invalidating the arbitration and forum selection clauses in the Dealer Agreement.  By contrast, in this Court, Plaintiff brings claims for violations of the Sherman Antitrust Act, the Texas Free Enterprise and Antitrust Act, the DTPA, and various state law torts, all predicated on an alleged scheme arising from and related to the Dealer Agreement.  Doc. 10 at 68-76.  And although the two actions seek different monetary and injunctive relief, they still both seek a declaratory judgment that the Dealer Agreement is unenforceable.  Doc. 10 at 77; *Santos I*, Dkt. 4-3 at 2-5.  If the Dealer Agreement is unenforceable, Plaintiff contends that the arbitration, forum selection, and noncompete clauses are thus unenforceable.  Doc. 10 at 36-37, 76.  Thus, Plaintiff essentially seeks to proffer additional arguments to invalidate the Dealer Agreement just like in *Santos II*.

Review of the record reveals that while the parties and causes of action in the two cases are closely linked, they are not identical.  But cases need not be identical for the first-to-file rule to apply.  *Sweet Little Mexico Corp.*, 665 F.3d at 678.  Instead, the question is whether there is "substantial overlap," which is found if "the core issue . . . is the same" in the two actions and "much of the proof adduced will likely be identical[.]" *Id.*  Because the Court's review of Plaintiff's complaints and accompanying evidence shows the core issues are the same and much of the proof adduced will be identical, the actions "substantially overlap" and are subject to the first-to-file rule.  *Id.*

Accordingly, the Court finds that the instant action substantially overlaps with Plaintiff's earlier-filed action pending in Western District of Texas (*Santos I*).  And because no compelling

circumstances counsel otherwise, the first-to-file rule applies, and this case should be transferred.[3]

## IV. CONCLUSION

For the foregoing reasons, Defendant Charles Shoffner's *Motion to Transfer Venue Pursuant to the First-to-File Doctrine*, Doc. 24, is **GRANTED**. It is **ORDERED** that this case be **TRANSFERRED** to the United States District Court for the Western District of Texas, Waco Division. However, the transfer is **STAYED** until June 12, 2026, to permit any party to file an objection to the presiding district judge of this Court within 14 days after service of this order. *See* FED. R. CIV. P. 72(a).

**SO ORDERED** on May 22, 2026.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[3] "As other district courts have pointed out, a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404(a) considerations." *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008) (citing *Fuller v. Abercrombie & Fitch Stores, Inc.,* 370 F.Supp.2d 686, 690-91 (E.D. Tenn. 2005). Because Plaintiff's action will be transferred under the first-to-file rule, the Court does not address, and expresses no opinion on, whether a transfer pursuant to § 1404(a) would be proper.